I represent Mr. Padilla-Castro The basis of the story is that Padilla-Castro The evidence is that Mr. Padilla-Castro was accountable for 11,000 kilograms of marijuana And the strongest piece of evidence is that the crime of the same factor of evidence was insufficient as to Mr. Padilla-Castro's claim that marijuana was criminalized That I don't exactly follow, Ms. Landau, because the charging allegations were different as to the two of them in terms of who participated and which overt acts And I think it was the PSR which indicated that your client was involved in four out of six of those charges So if there were any error at all, why isn't it that Ms. Fernandez got the break rather than the reverse? Well, Judge Reimer, I think there's a couple of points. I will confess I don't have I'm not in a position of having Ms. Fernandez's precepts report because I don't represent her, obviously, as a confidential document But according to the judge, the allegations were the same as to both defendants And the government presented the same evidence as to both defendants And they both pleaded guilty to conspiracy In the PSR reverse drug transactions, your client is mentioned in each one of them While Fernandez is mentioned in only the last two Now, whether it was correct or incorrect for the district court to buy into that and to say that she only did two Whereas your client did all six, why is it clearly erroneous? Well, it's clearly erroneous, Your Honor, and probably a violation of legal protection is difficult to say because Well, anyway, but the problem is the precepts report may not have explicitly referenced her But it came to the same conclusion as regards the quantity The probation officer made the same recommendations And, in fact, the government took the position that the same quantity applied to both defendants So, and when you look at the evidence that was presented by the government at sentencing It pertained to both, and, in fact, they presented additional evidence as regards Ms. Fernandez That wasn't, you know, in terms of the global tracking and the GPS The evidence that she was involved in purchasing and obtaining these items Which wasn't, you know, which wasn't as against Mr. Padilla So, I mean, I think that regardless of the fact that the PSR didn't mention her specifically It's quite clear from the context of the PSR that she was equally involved as a partner with Mr. Padilla And that she was not viewed as lesser culpable except in terms of the role adjustment What difference, counsel, what difference, if any, does it make that he pleaded guilty to two charges Whereas she pleaded guilty only to one I believe he pleaded to the forfeiture as well as a conspiracy And, therefore, there may have been a broader base of information that's applicable Well, your honor, I don't think that that does make a difference The forfeiture charge goes to who held the property that was owned, the Phoenix property It was in Mr. Padilla's name, and she was equally linked with that property The only, the only area that it might pertain to is that in terms of one of the 300-pound transactions There was one 300-pound transaction that's mentioned, it was an earlier transaction That transaction, there was, that is one of the only transactions for which there was any corroboration In that a boat that belonged to one of the Montana co-conspirators was found at the 691 baseline property in Phoenix So, I mean, I think that as to that transaction, there's some independent corroboration Apart from the hearsay that was primarily relied on by the government and the district court What is your response to Judge Reimer's question, which is What if the judge just let her off too easy? Why does that help him? What if there was a mistake, but the mistake was that she should have gotten a longer sentence? How does that help him? Well, Your Honor, the problem with that is that does point to an equal protection violation You know, the judge could have made his findings in a lot of different ways The judge could have said, well, I find them both responsible for the same quantity Because the evidence is the same for both But I don't think that Ms. Hernandez, in the interest of justice, or under 3553 Should get the same sentence, and I'm going to give her the mandatory minimum If the judge had done that, you know, I wouldn't be making this argument But the fact is the judge didn't do that I mean, I think you can even make a similar argument as to, well, she didn't deserve a role adjustment And maybe my client did I don't agree that my client deserved a role adjustment But, you know, you could say, well, the judge made the differential there But that's not what the judge did The judge said, well, I'm sticking with the guidelines But I'm making different quantity findings Even though the evidence against these two defendants is basically the same I mean, the judge didn't say that in those words But that's essentially what happened So that, I think, is the problem And that is what points to an equal protection argument Which is not an argument I make lightly If there aren't further questions on this point I would just like to address the hearsay briefly The fundamental problem in this case, aside from the issue of the difference Between Ms. Hernandez and Mr. Padilla Is that the government relied on, and the district court relied on Hearsay evidence that was largely uncorroborated This is not a case where the government presented the trial testimony Or testimony under oath of conspirators This is a case where the government relied on debriefing statements Made to agents, and the agents testified This court has disapproved this in the past And there is an insufficient level of independent corroboration To support the district court's findings What about the vote and the $250,000? The vote, I think the vote is corroboration But only for one 300-pound transaction Why isn't that corroboration? The idea of corroboration isn't every piece of the amount necessarily But it is to bolster the credibility of the testifying witness That this is not stuff that's made up Your Honor, I think that is correct Except that here we already know Mr. Padilla provided marijuana He pleaded guilty to that He admitted to providing more than 100 kilograms And in his plea colloquy It was made clear that he provided somewhere between 100 and 400 kilograms So the fact that the 300 pounds is corroborated Doesn't get us up to the 1,000-kilogram level I mean, you're correct that corroboration Perhaps every single quantity doesn't have to be corroborated But when you have sentencing in excess So far in excess of what the defendant pleaded to And you have a co-defendant who's getting sentenced For exactly what she did plead to You need some significant corroboration to support that And it was lacking here Are you saying you don't need corroboration for each and every pound? Or is it enough if you have it on some pounds And I will reflect over the others? No, Your Honor Excuse me, Your Honor No, I would say you do Well, maybe not for each and every pound But you certainly need it for each and every transaction Especially when we're talking about transactions here that are very large We're not talking about, you know, one or two pounds here We're talking about 650 pounds 1,000 pounds 1,500 pounds In those situations, yes, you do need corroboration for those quantities If there's no further questions I'd like to reserve the rest of my time for rebuttal Certainly Ms. Stewart Good morning, Your Honors I am Paulette Stewart for the District of Montana I'm in AUSA in the Helena office And I have the case for appeal The district court in this case gave Really the co-defendant and the defendant in this case Both really the true benefit of the doubt By using a clear and convincing standard at sentencing The only three amounts that really seem to be in dispute in this case Are the 300 pounds from paragraph Or I'm sorry, the 250 pounds from paragraph 14 The 650 pounds from paragraph 16 And the 1,000 pounds from paragraph 17 The 300 pounds in paragraph 13 was not disputed in the reply brief And that's provided for by both hearsay from Hector Fernandez We have the boat in the utility trailer We have photographs of the boat on Mr. Padilla's properties With the 250 pounds, we have that marijuana from Hector Fernandez That was given to Givens and others in billings With the 650 pounds, those are five trips up to Montana By Eduardo and Ms. Cellular And then the 1,000 pounds are basically from paragraph 17 From 1999 to August of 2000 That information was actually from a number of sources Which were both Fernandez brothers Ms. Cellular, Mr. Ballesteros And at that time of the 1,000 pound transaction Mr. Ballesteros was living at the two different houses in Phoenix With the two co-defendants And he was paid by this defendant, Mr. Padilla To live with Ms. Fernandez While he was away or out of town During that time, Mr. Ballesteros saw approximately 1.25 million dollars Which if you rough that out as to what the Fernandez brothers were paying for marijuana That's over 2,200 pounds worth of marijuana that he saw The findings of the district court were not clearly erroneous The district court can rely upon hearsay The leadership enhancement of four points was proper This was a major importation and distribution network for marijuana Which Mr. Padilla employed pilots Drivers of marijuana into the country from Mexico Drivers to Montana He is the person that had multiple properties where the drugs were stored He was the actual owner of the Phoenix properties And he additionally again was the person who paid Mr. Ballesteros To live with Ms. Fernandez while he was out of town In this case there is no gender discrimination What we have is the district court found the two co-defendants Not equally responsible or not equally participating in the conspiracy In paragraph 10 of the PSRs And they are basically identical for the offense conduct It mentions in paragraph 10 that the two co-defendants began a relationship in 1992 She is not mentioned in the PSR again until paragraph 19, I'm sorry, 21 Where she acted, where she went and got the GPS For the pilots or for the drives into the United States But she is completely devoid in the PSR of paragraph 13 which is 300 pounds The district court did not find her responsible for Paragraph 14 of 250 pounds where the district court did not find her responsible The 650 pounds out of paragraph 16 the district court did not find her responsible And the 1000 pounds from paragraph 17 that the district court did not find her responsible for  The government believed that we had sufficient proof on both co-defendants The district court disagreed, that's why the district court is the one who determines How much drugs each co-defendant is responsible for For sentencing purposes and he properly relied on the hearsay statements And finally concerning the gender argument There actually has to be a purpose, a shown purpose, a deliberate effort on the part of the district court To get to an equal protection violation In this case that's not present, it's her windfall Since she only received a 60 month sentence But that does not mean that the defendant in this case received an illegal sentence or an illegal guideline calculation If there are no further questions the government will submit on the briefs Well I have a question, would you do it again for me please Going through those paragraphs 13, 14, 15, 16, 17 And say very briefly what the collaboration is for each one Certainly your honor Go ahead In paragraph 13 In the excerpts of records pages 123 to 24 It talks about both Hector Fernandez and Johansen And this is where the boat and the utility trailer were taken by Hector That was later found on the defendant's baseline property This is property that the defendant has forfeited in this case Again on page 153 There is discussion about this marijuana to the defendant from Hector And then on pages 169 to 170 There were actually photographs of the boat on both the billings and the baseline properties Where it was admitted And paragraph 14 The 250 pounds There is discussion about the debrief from Hector on page 124 I don't specifically have a note regarding cooperation on that one I apologize Paragraph 16 Wait wait are you saying there is no cooperation Are you saying there is no cooperation for paragraph 14 No this is actually this is the Amount that was given to Mr. Givens who did make a statement I just I don't I do not have a specific note I went through and actually charted out the differences between these defendants And I do not have a specific note but this was The marijuana brought to billings that was sold to Mr. Givens after other billings distributors were arrested And that this is the 250 pounds that specifically came to Montana How about 16 On paragraph 16 these were statements by both Eduardo Fernandez and Ms. Cellular And this concerned the five trips amounting to 650 pounds And then this is also the What is the collaboration in that 16 In 16 actually it's two different debriefs that collaborate each other And this is also the marijuana that Mr. Marquez drove up Although Mr. Marquez did not make a statement But this is cooperated basically by two separate debriefs And then 17 probably has some of the most cooperation Other than the photographs in 14 And excerpts of records page 126 and 143 This is information provided by Eduardo Fernandez And then on pages 128, 146 and 165 Is the discussion where Mr. Ballesteros lived at the two locations with the defendants And that he was paid to live with Ms. Fernandez while the defendant was away This is the time frame in which he saw the 1.2 million dollars in cash And then again on page 146 the agents discussed that they actually received Information on this transaction from Eduardo and Hector Fernandez Ms. Cellular and Mr. Ballesteros Thank you Okay, thank you very much Thank you Landau Wait Oh I'm sorry I'd like to respond I'm not quite up with the microphone yet From my reading of the excerpts of record There was no corroboration for the 250 pounds Referenced in paragraph 14 of the PSR It was based only on Hector Fernandez's statement And similarly in paragraph 16 which references the 650 pounds It was based solely on Eduardo Fernandez's statement Now, Ms. Quellar could not corroborate all of that Because she only ever saw a total of 300 pounds And it's not clear which 300 pounds she was even referencing This is the excerpt of record site to reference in my brief But at numerous pages the agent Magnuson Who was the primary agent Testified that these quantities were based on statements by Hector Fernandez And Eduardo Fernandez only In terms of the 1,000 pounds The government seems to be arguing that Telly Ballesteros Is the primary corroboration for that based on the cash But I find it ironic that the government is arguing this Given that Telly would say Well, first of all, Mr. Ballesteros He also did not testify under oath This is all debriefing statements Second of all, my client was not even there If he was paid to live there when my client wasn't there It's difficult to link that to my client If there's no further questions, I will submit Thank you, Ms. Randolph Thank you, counsel Both of you It's a matter to start with
judges: Rymer, Graber, Rhoades